**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **HOUSTON SEAFOOD COMPANY, LLC, GULF MARINE PRODUCT CO, INC., and NINGBO TRADING COMPANY, LLC** § § § § § | |
| **VS.** § § § § | **C.A. NO. 4:20-cv-3597** |
| **UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF AGRICULTURE** § § § | **JURY DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **HOUSTON SEAFOOD COMPANY, LLC, GULF MARINE PRODUCT CO, INC.** and **NINGBO TRADING COMPANY, LLC,** Plaintiffs complaining of Defendants **UNITED STATES OF AMERICA** and **UNITED STATES DEPARTMENT OF AGRICULTURE** for cause of action and shows the following:

## PARTIES

1. Plaintiff **HOUSTON SEAFOOD COMPANY, LLC** ("HSF") is a Texas limited liability company that sells seafood and has its principle place of business in Harris County, Texas.

2. Plaintiff **GULF MARINE PRODUCT CO, INC.** ("Gulf Marine") is a Louisiana corporation with its principal place of business in Harvey, Louisiana.

3. Plaintiff **NINGBO TRADING COMPANY, LLC** ("Ningbo") is a Louisiana limited liability company with its principal place of business in Harvey, Louisiana.

4. Defendant **UNITED STATES OF AMERICA** imposed the disputed tariffs causing Plaintiffs' alleged damages and is the statutory defendant under 28 U.S.C. § 1491 and will

be served pursuant to Federal Rule of Civil Procedure 4 by delivering a copy of the summons and Complaint to the United States Attorney for the Southern District of Texas.

5. Defendant **UNITED STATES DEPARTMENT OF AGRICULTURE** ("USDA") made the bailout payments in question and will be served pursuant to Federal Rule of Civil Procedure 4 by delivering a copy of the summons and Complaint to the United States Attorney for the Southern District of Texas and also by sending a copy of the summons and Complaint to defendant via certified mail.

## JURISDICTION AND VENUE

6. Jurisdiction of this action is vested in this Court under 28 U.S.C. § 1331 as the Plaintiffs allege that the Defendants' acts and omissions violate the Fifth and Fourteenth Amendments to the United States Constitution. Additionally, venue lies in this Court under 28 U.S.C. § 1391 as the causes of action alleged herein are based upon actions and activities that substantially took place at all relevant times in the Southern District of Texas. Furthermore, the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1331 and accordingly, jurisdiction is proper before this court.

7. This is a civil liability case brought to collect a legal debt of money damages due and owing to Plaintiffs by reasons of the injuries to and damages of Plaintiffs by reason of improper and wrongful conduct on the part of the Defendants. More specifically, this action concerns Defendants' unprecedented, unbounded, and unlimited federal subsidization of the farming industry to the intentional exclusion of all other industries, such as Plaintiffs', for the sole purpose of enhancing President Donald J. Trump's political and reelection fortunes. These actions serve no conceivable or legitimate state end other than the personal desires of President Trump to be reelected.

## FACTUAL STATEMENT

8.      Plaintiffs are United States' based companies that buy and sell seafood both in the United States and overseas. A primary source of product for Plaintiffs is China. Since becoming president, Donald J. Trump has instituted a series of trade tariffs on various countries concerning various goods. China has been the primary target of these tariffs. Despite repeated assertions that the foreign countries are paying "billions of dollars" to the United States, the fact is that it is industries and companies, such as Plaintiffs, who in actuality bear the costs associated with the tariffs in the form of increased product costs and lower profit margins.

9.      In 2019 and as a direct result of the drastic effects of Defendants' unilateral and oppressive tariffs and the effect of those tariffs on the American farming industry, the federal government delivered an extraordinary financial aid package to America's farmers. Farm subsidies jumped to their highest level in 14 years, most of them paid out without any action by Congress. This has continued into 2020. However, other industries, such as Plaintiffs' have not received any financial aid despite also being hit hard by the tariffs imposed by Defendants on foreign countries, such as China, who in turn were retaliating for the Trump administration's tariffs.

10.     This bailout money sent to farmers by the USDA has been described by one farmer as "Trump money". In 2018, the USDA announced $16 billion in trade-related aid to farmers which came on top of the previous year's $12 billion package, for a grand total of $28 billion in two years. About $19 billion of that money had been paid out by the end of 2019, and the rest will be paid in 2020 with recent reports indicating that the payouts may be as large as $56 billion dollars by year end. "President Trump has great affection for America's farmers and ranchers. He knows that they're fighting the fight and that they're on the front lines," Secretary of Agriculture Sonny Perdue told reporters while announcing the aid package. However, to date, this bailout has not

generated much controversy or inspection despite the fact that it is more than the final cost of bailing out the auto industry during the financial crisis of 2008, which bailout was fiercely debated in Congress. Moreover, the payments made to the farming industry are exceedingly generous in that the USDA is paying farmers roughly twice as much as the actual harm that they suffered from Trump's trade war. Yet, other industries, such as Plaintiffs', received no subsidies at all instead having to pay higher product prices due to the imposition of the tariffs initiated and pushed for by President Trump who has been quoted as placing great importance on the importance of farmers and the 2020 presidential election. For instance, on February 21, 2020 and as reported in the Washington Post, President Trump pledged to increase the size of the farming bailout program by tweeting:

> "IF OUR FORMALLY TARGETED FARMERS NEED ADDITIONAL AID UNTIL SUCH TIME AS THE TRADE DEALS WITH CHINA, MEXICO, CANADA AND OTHERS FULLY KICK IN, THAT AID WILL BE PROVIDED BY THE FEDERAL GOVERNMENT,"

In that same Washington Post article, Roger Johnson, president of the National Farmers Union, was quoted as saying "The president is going to do whatever he can to appease the farmers because it's an election year." Yet, no such federal assistance was forthcoming to other industries, such as Plaintiffs who continue to pay the high price of the imposed tariffs and who's workers are also voters.

11.     Consequently, while farmers are receiving unprecedented federal aid, other industries are struggling with higher costs and lower profit margins. Plaintiffs are members of another industry that is suffering the ill effects of Defendants' favoritism towards the farmers, farmers who President Trump has clearly indicated a preference for as he seeks their votes in the 2020 presidential election. This intentional disparity is further evidenced by a recent analysis performed by the Environmental Working Group through a Freedom of Information Act request

which found the following regarding the disbursements in question made through the Agriculture Department's Market Facilitation Program:

    a)    9 out of every 10 counties that voted for Trump in 2016 received some support through the Agriculture Department's Market Facilitation Program. The new data indicates that 91 percent of the money disbursed through the program went to places that supported Trump four years ago. Only 9 percent went to places that had voted for Hillary Clinton.

    b)    counties that flipped from blue to red in 2016 received an average of nearly $3 million more than ones that backed the Republican presidential candidate in both 2012 and 2016. Counties won by Clinton received an average of $5.7 million. Counties that voted Republican in 2012 and 2016 received an average of $8.4 million. Counties that flipped got an average of $11.1 million.

    c)    counties that voted for Clinton received $16.68 per person. Counties that voted for Trump received $157.83 per person, while the average per-person amount in counties that flipped from blue to red in 2016 was just over $163.

    d)    individual counties that backed Clinton got an average of $224 per person, while those that supported Trump received an average of almost $756 per person.

12. Defendants' actions are contrary to any rationally related and legitimate basis for such favoritism being shown farmers and the farming industry to the obvious and severe detriment of other industries and individuals. These actions are clearly meant for one purpose and one purpose only – enhance the reelection prospects of Donald J. Trump.

## CAUSES OF ACTION

### Fifth Amendment – Due Process and Equal Protection

13. Plaintiffs incorporate herein by reference the factual statements set forth in Paragraph 1 through 12 above.

14. The Fifth Amendment's Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Constitution, Amend. V.

The Due Process Clause protects Plaintiffs against arbitrary or irrational actions that are outside the normal manner prescribed by law. The Fifth Amendment Due Process clause also assures that the same equal protection principles of the Fourteenth Amendment applicable to the states generally constrains the federal government as well.

15. However, as fully exhibited by Defendants' actions, they are providing unequal protection and favoritism to the farming industry and farmers from the serious financial impacts of the tariffs to the exclusion of other industries, such as Plaintiffs. By providing monetary bailouts in the billions of dollars to the farming industry, Defendants are showing monetary favoritism to one industry to the exclusion of others for the sole purpose of ensuring the farming industry's support for the current administration in the 2020 presidential election which is not a rational basis for doing so and which is contrary to established standards relative to government bailouts and in direct contravention of the United States Constitution.

16. Plaintiffs have suffered hundreds of thousands of dollars in losses as a direct and proximate result of the tariffs. For instance, records show that HSF paid over $641,000 more for product and brokerage fees as direct result of the tariffs. Gulf Marine similarly paid more than $487,341.00 because of the tariffs for its products and fees with Ningbo paying more than $730,000.00 for its products and fees directly due to the higher costs and lower profit margins due to the imposed tariffs. These are significant losses for companies that are now struggling with Covid-19. Yet, there has been no mention of any federal bailout for the wholesale seafood business. Instead, billions of dollars have been paid to farmers in bailout funds which are in addition to the annual subsidies the farming industry already receives. Such favoritism and the basis for it as stated by President Trump clearly indicates an irrational basis on which these monetary bailouts are premised in direct violation of the due process and equal protection to be afforded and guaranteed

Plaintiffs. As recently reported in the Washington Post, the support of the country's farmers proved crucial for President Trump's initial path to the White House as approximately 70 percent of farmers, traditionally Democratic or independent, voted for him in 2016. He clearly is hoping for a repeat performance ensured by the billions of dollars being paid out to the farming industry.

17. As a direct and proximate result of the unconstitutional acts by Defendants, Plaintiffs have suffered and will continue to suffer irreparable harm and injuries including but not limited to significant business economic losses, business ruin, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

### Declaratory Relief

18. Plaintiffs incorporate herein by reference the factual statements set forth in Paragraph 1 through 17 above.

19. Plaintiffs seek declaratory relief pursuant to Section 1983 and 28 U.S.C. § 2201. Plaintiffs ask the Court to declare that Defendants' actions violate the Fifth Amendment's due process clause and the implicit guarantee of equal protection.

### ATTORNEY'S FEES

20. Plaintiffs request payment of their reasonable attorney's fees and costs. Plaintiffs are entitled to recover reasonable and necessary attorney's fees and expert fees. 42 U.S.C § 1988.

### JURY DEMAND

21. Plaintiffs request a trial by jury on all of their claims.

### PRAYER

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiffs demand a jury trial on all claims so triable, and judgment against Defendants for the following:

    a. Their actual damages;

    b.    Declaratory relief as requested;

    c.    All costs, recoverable expenses and attorney's fees incurred in prosecuting these claims; and

    d.    For such further relief, both at law and in equity, as the Court deems is just and equitable.

Respectfully submitted,

**LAW OFFICES OF KEVIN R. MICHAELS, P.C.**

By:    */s/ Kevin R. Michaels*
        Kevin R. Michaels
        State Bar No.: 00784598
        16000 Barkers Point Lane, Suite 208
        Houston, Texas 77079
        Telephone: 281-496-9889
        Facsimile: 281-496-4211
        kmichaels@michaelslaw.net

        **ATTORNEY-IN-CHARGE FOR PLAINTIFF**